## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DOUGLAS H. CALLAWAY,

          Plaintiff,

-vs-                              Case No.  6:05-cv-1569-Orl-18DAB

LOUIS A. BELL, JR.,

          Defendant.

---

## ORDER

THIS CAUSE comes before the Court upon the Motion to Dismiss (Doc. 6, filed January 12, 2006) by Defendant Louis A. Bell, Jr. ("Bell"), to which Plaintiff Douglas H. Callaway ("Callaway") responded in opposition (Doc. 10, filed January 19, 2006). Callaway brings his claim under 42 U.S.C. § 1983, alleging that Bell, a Volusia County probation officer, made deliberate false statements with respect to drug test results that ultimately caused Callaway to be wrongfully incarcerated. Bell counters that he is immune from suit due to the doctrine of absolute immunity. Bell also asserts that Fla. Stat. § 768.72 renders the remedy of punitive damages unavailable to Callaway.

### I. BACKGROUND

On February 24, 2003, the Miami-Dade County Circuit Court placed Callaway on three years of probation for aggravated assault. The court withheld adjudication of guilt and transferred Callaway's probation to Volusia County, Florida. On October 20, 2003, Bell became Callaway's probation supervisor. On January 2, 2004, Callaway submitted a monthly report, in compliance with the terms of his probation. On the same day, Bell made an entry in

the Department of Corrections case notes indicating that Callaway had tested positive for drugs on the basis of a January 2, 2004 urine sample.

On January 15, 2004, Bell completed an affidavit for violation of probation and warrant stating that Callaway tested positive for cocaine and marijuana. On February 12, 2004, a Miami-Dade circuit court judge considered the affidavit and issued a no bond arrest warrant. Five days later, employees of the Ormond Beach Police Department arrested Callaway and transferred him to a Volusia County jail with no bond. At the time of Callaway's arrest, Bell made an entry in the Department of Corrections case notes indicating that Callaway denied cocaine or marijuana use.

On March 3, 2004, Callaway was transferred to a Miami-Dade county jail without bond. Callaway refused plea negotiations and insisted that the last time he provided a urine sample was August 4, 2003, at which time he tested negative for controlled substances. On March 29, 2004, the Circuit Court Judge held a probation violation hearing where Bell offered testimony on behalf of the State of Florida. At the hearing, Callaway requested a DNA analysis of the January 2, 2004 urine sample. After Callaway's request, Bell stated that the urine sample in question had not been collected from Callaway. The court dismissed the affidavit for violation of probation and released Callaway from custody. As of that time, Callaway had been held in custody for thirty-eight days.

Callaway alleges that Bell completed the January 2, 2004 case note entry and subsequent affidavit with intentional malice, or with reckless disregard for the truth, in violation of the right to be free from arrest and incarceration in the absence of probable cause.

## II.  MOTION TO DISMISS

A court should not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Sea Vessel, Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994).  In evaluating a motion to dismiss, the court must accept all the alleged facts as true, and draw all inferences from those facts in the light most favorable to the plaintiff. Hunnings v. Texaco, Inc., 29 F.3d 1480, 1484 (11th Cir. 1994).  A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint: it does not decide the merits of the case.  Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984).  Federal courts must follow Rule 8(a) of the Federal Rules of Civil Procedure requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under this liberal pleading standard, the allegations need only put the opposing party on fair notice of what the claim is and the grounds upon which it rests. Conley, 355 U.S. at 47.  The court, however, does not generally accept conclusory allegations as true.  S. Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (citing Assoc. Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974)).

## III.  DISCUSSION

Bell raises two arguments in the Motion to Dismiss.  First, Bell argues that he, as a probation officer, receives absolute immunity and therefore each of the Complaint's three counts must be dismissed.  Second, Bell argues that Callaway's claim for punitive damages is unavailable under Florida law.  The Court turns now to the question of absolute immunity.

## A. Absolute Immunity

As a general rule, judges are absolutely immune from suit and civil liability. See
Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000) ("Judges are entitled to absolute judicial
immunity from damages for those acts taken while they are acting in their judicial capacity
unless they acted in the clear absence of all jurisdiction.  This immunity applies even when
the judge's acts are in error, malicious, or were in excess of his or her jurisdiction.")
(citations and internal quotations omitted).  The doctrine of absolute immunity extends to
nonjudicial government actors when they perform a function "intimately associated with the
judicial process." Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005) (internal
quotations omitted).[1]  "Like judges, these officials must be acting within the scope of their
authority." Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994).  The Supreme Court has
been cautious in extending the protection of absolute immunity, and has instructed that
"federal officials who seek absolute exemption from personal liability for unconstitutional
conduct must bear the burden of showing that public policy requires an exemption of that
scope." Butz v. Economou, 438 U.S. 478, 506 (1978).  "The presumption is that qualified
rather than absolute immunity is sufficient to protect government officials in the exercise of
their duties." Burns v. Reed, 500 U.S. 478, 486-87 (1991).

The absolute immunity question requires "a *functional* analysis of the action taken by
the official in relation to the judicial process." Roland, 19 F.3d at 555.  "Courts must look to
the nature of the function performed, not the identity of the actor who performed it." Jones

---

[1] This extension of absolute immunity to nonjudicial officers is often referred to as "absolute quasi-judicial
immunity." Holmes, 418 F.3d at 1258.

v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999) (internal quotations omitted). "The more distant a function is from the judicial process, the less likely absolute immunity will attach." Snell v. Tunnell, 920 F.2d 673, 687 (10th Cir. 1990). Prosecutors, for example, receive absolute immunity for "the initiation and pursuit of criminal prosecution." Jones, 174 F.3d at 1281 (citing Imbler v. Pachtman, 424 U.S. 409, 420-21 (1976)). On the other hand, prosecutors are not absolutely immune for "knowingly making false statements of fact in an affidavit supporting an application for an arrest warrant." Id. at 1282 (citing Kalina v. Fletcher, 522 U.S. 118, 131 (1997)). Nor are police officers absolutely immune for "submitting supporting affidavits in their applications for arrest warrants." Id. (citing Malley v. Briggs, 475 U.S. 335, 342-43 (1986)).

As of yet, the Eleventh Circuit has not addressed whether a probation officer receives absolute immunity when supervising probationers and initiating probation revocation proceedings. To be sure, certain functions performed by probation officers are protected by absolute immunity. Bell asserts that this case is controlled by Hughes v. Chesser, 731 F.2d 1489 (11th Cir.1984), which held that a probation officer's preparation of a presentence report received absolute immunity. Id. at 1490. In Hughes, the Eleventh Circuit noted that prosecutors receive absolute immunity "for their decision to prosecute and their conduct of the government's case" because "these activities are intimately associated with the judicial phase of the criminal process. Id. (internal quotations omitted). The court then emphasized that preparing a presentence report "is an integral part of the sentencing process, and in preparing the report the probation officer acts at the direction of the court." Id.; see also Dorman v. Higgins, 821 F.2d 133, 137 (2d Cir. 1987) (extending absolute immunity to

-5-

probation officers preparing a presentence report); <u>Tripati v. INS</u>, 784 F.2d 345, 348 (10th Cir. 1986) (same); <u>Demoran v. Witt</u>, 781 F.2d 155, 158 (9th Cir. 1985) (same); <u>Spaulding v. Nielsen</u>, 599 F.2d 728, 729 (5th Cir. 1979) (same); <u>Burkes v. Callion</u>, 433 F.2d 318, 319 (9th Cir. 1970) (same), <u>cert. denied</u>, 403 U.S. 908 (1971).

It is a mistake, however, to liken this case to <u>Hughes</u>. The preparation of a presentence report is a task different in kind to the alleged actions taken by Bell, who allegedly made a fictitious entry in the department case notes and false accusations in an affidavit for violation of probation and warrant. (Compl. ¶¶ 9, 12, 13.) There are no facts in the Complaint—or in the Motion to Dismiss—indicating that Bell's actions were "intimately associated with the judicial phase of the criminal process" <u>Hughes</u>, 731 F.2d at 1490, or taken "at the direction of a judge." <u>Id.</u>

Bell's actions, as alleged, take on a more investigatory nature, rather than prosecutory or adjudicatory. <u>See Scotto v. Almenas</u>, 143 F.3d 105, 112-13 (2d Cir. 1998) (finding that a parole officer's preparation of a parole violation report and subsequent recommendation for an arrest warrant was investigatory, not prosecutorial); <u>Ray v. Pickett</u>, 734 F.2d 370, 374 (8th Cir. 1984) (finding that parole officer's filing of parole violation report triggered an "investigative process" and was neither adjudicatory nor prosecutorial in nature). Bell's actions, therefore, are analogized more fittingly to a police officer's amassing of evidence and submission of an affidavit supporting arrest[2] or to a prosecutor's submission of an

---

[2] <u>See Malley v. Briggs</u>, 475 U.S. 335, 342-43 (1998) (denying absolute immunity to police officer who submitted false affidavit supporting arrest).

affidavit supporting arrest.[3]  Circuit courts addressing investigatory functions that lead to the

revocation of probation or parole have routinely denied absolute immunity.  See Galvan v.

Garmon, 710 F.2d 214, 215 (5th Cir. 1983), cert. denied, 466 U.S. 949 (1984) (holding that

probation officer's erroneous preparation of a motion to revoke probation that caused arrest

and incarceration did not warrant absolute immunity; explaining that the initiation of

revocation proceedings was done at the probation officer's "own initiative and at a different

phase of the criminal process less intimately associated with the judiciary."); see also Scotto,

143 F.3d 105, 111-13 (2d Cir. 1998) (stating that parole board officials are absolutely

immune when they "grant, deny or revoke parole, because this task is functionally

comparable to that of a judge," id. at 111, but finding that a parole officer's preparation of a

parole violation report and recommendation of an arrest warrant was not at the direction of

the judge and was more akin to a police officer's probable cause determination. id. at 112;

denying absolute immunity, id. at 113): Wilson v. Kelkhoff, 86 F.3d 1438, 1446  (7th Cir.

1996) (finding that a field supervisor's filing of a parole violation report and notice of

charges was similar to a police officer filing an affidavit supporting arrest: denying absolute

immunity); Mee v. Ortega, 967 F.2d 423, 429 (10th Cir. 1992) (holding that a parole officer's

decision to hold parolee in custody pending the revocation hearing did not warrant absolute

immunity); Harper v. Jeffries, 808 F.2d 281, 284 (3rd Cir. 1986) (holding that a parole

officer's charging of parolee with wrongdoing and presenting of evidence to that effect did

not warrant absolute immunity): Ray v. Pickett. 734 F.2d 370, 374 (8th Cir. 1984) (finding

---

[3]See Kalina v. Fletcher, 522 U.S. 118, 131 (1997) (denying absolute immunity to prosecutor who filed a false affidavit supporting arrest).

that a probation officer's filing of a parole violation report to secure a warrant was akin to a police officer making a probable cause determination; denying absolute immunity).[4]

Based on the substantial amount of authority weighing against the granting of absolute immunity under the circumstances alleged here, the Court must conclude that Bell fails to carry the burden of showing that absolute immunity is properly afforded to him. Bell's Motion to Dismiss on the basis of absolute immunity is accordingly denied.[5]

## B. Punitive Damages

In Count III, Callaway raises a malicious prosecution state law claim in which he requests punitive damages. Bell asserts that punitive damages are unavailable pursuant to Fla. Stat. § 768.72, which directs that punitive damages may not be pled without a reasonable showing or proffer of evidence in the complaint.[6] This is an old argument that

---

[4]Bell also argues that Holmes v. Crosby, 418 F.3d 1256 (11th Cir. 2005) mandates absolute immunity to Bell's completion of the affidavit because the affidavit constitutes testimony. (Doc. 6 at 8.) In Holmes, the Eleventh Circuit addressed whether a parole officer received absolute immunity for providing testimony at a revocation hearing. Id. at 1258. After noting that witnesses in criminal trials and grand jury proceedings receive absolute immunity, the court held "that parole officers enjoy [absolute] immunity for testimony given during parole revocation hearings when they act within the scope of their duties." Id. This case is easily distinguished from Holmes, however, because Bell did not provide testimony at a revocation hearing; rather, he completed an affidavit for probation violation and arrest warrant on January 15, 2004, which the circuit court judge considered when making the decision to issue the warrant. Bell's function, therefore, is analogous to a police officer (or prosecutor) who files an affidavit supporting an arrest, not to a testifying witness at a revocation hearing.

[5]Because the parties do not address the defense of qualified immunity, the Court does not consider it at this stage.

[6]Section 768.72(1) provides:
(1) In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.

Fla. Stat. § 768.72(1).

has been shown to be flawed by the Eleventh Circuit in <u>Cohen v. Office Depot, Inc.</u>, 204
F.3d 1069 (11th Cir. 1999), <u>aff'g in part and vacat'g on other grounds</u>, 184 F.3d 1292 (11th
Cir. 1999). The barrier to pleading punitive damages contained in section 768.72 conflicts
with <u>Fed. R. Civ. P.</u> 8(a)(3), which permits a party to include in the complaint any relief
sought. Under <u>Cohen</u>, the state law yields to the federal rule, thereby rendering Section
768.72 inapplicable in federal court. <u>Cohen</u>, 204 F.3d at 1072 ("Florida Statute § 768.72
conflicts with and must yield to the 'short and plain statement' rule contained in Federal
Rule of Civil Procedure 8(a)(3), and as a result a Florida plaintiff in federal court because of
diversity jurisdiction need not obtain leave of court before pleading a request for punitive
damages."). Callaway may plead punitive damages, therefore, without observing the
requirements of Section 768.72.[7] Bell's Motion to Dismiss the request for punitive damages
in Count III is accordingly denied.

---

[7]While the request for punitive damages in <u>Cohen</u> was contingent upon a state claim gaining entry to federal court via diversity jurisdiction, this Court sees no reason why <u>Cohen</u> would not apply here, where the malicious prosecution claim—under which punitive damages is sought—is pendant to the section 1983 federal question claims. <u>See, e.g.,</u> <u>Larson v. Correct Craft, Inc.</u>, No. 6:05-CV-686-ORL31JGG, 2005 WL 1902438, at *4 (M.D. Fla. Aug. 8, 2005) ("Other courts subsequently have applied the analysis in <u>Cohen</u> to hold that the pleading requirements of Florida Statute § 768.72 also do not apply to pendent and ancillary state law claims."); <u>Vacation Break U.S.A., Inc. v. Marktg. Response Group & Laser Co.</u>, 189 F.R.D. 474, 479 (M.D. Fla. 1999) ("[U]nder the provisions of <u>Erie R. Co.</u>, <u>Mintz</u>, and <u>McGinty</u>, this Court finds that the application of <u>Cohen</u> to pendent and ancillary state law claims is appropriate.").

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Dismiss (Doc. 6).

**DONE** and **ORDERED** in Orlando, Florida on this _____ day of May, 2006.

_____
**G. KENDALL SHARP**
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

-10-